## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **NEECY MERLINDA WORLEY,** | ) | |
| Plaintiff | ) | |
| v. | ) | Civil Action No. 1:14cv00019 |
| | ) | **MEMORANDUM OPINION** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | By:   Pamela Meade Sargent |
| Defendant | ) | United States Magistrate Judge |

### I. Background and Standard of Review

Plaintiff, Neecy Merlinda Worley, ("Worley"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying her claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423 and 1381 *et seq.* (West 2011 & West 2012). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642

(4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Worley protectively filed her applications for SSI and DIB on March 12, 2010, alleging disability as of January 1, 2010, due to back pain, swelling and fatigue resulting from auto immune diseases. (Record, ("R."), at 300-01, 304-09, 380, 384.) The claims were denied initially and upon reconsideration. (R. at 157-59, 165, 168-70, 172-77, 179-81.) Worley then requested a hearing before an administrative law judge, ("ALJ"). (R. at 182.) A hearing was held on May 22, 2012, at which Worley was represented by counsel. (R. at 54-94.) By decision dated June 4, 2012, the ALJ issued a fully favorable decision, finding that Worley was disabled beginning January 1, 2010. (R. at 145-50.) The ALJ found that the medical evidence established that Worley had severe impairments, namely patellofemoral arthritis and tendonitis; myalgias and myositis; esophageal reflux and cyclic vomiting syndrome;[1] hammer toe;[2] metatarsalgia;[3] plantar fasciitis; Sjögren's syndrome;[4] and Hashimoto's thyroiditis.[5] (R. at 147.) The ALJ also

---

[1] Cyclic vomiting syndrome is characterized by episodes of severe vomiting that have no apparent cause. Episodes can last for hours or days and alternate with relatively symptom-free periods of time. http://www.mayoclinic.org/diseases-conditions/cyclic-vomiting-syndrome/basics/definition/con-20028160 (last visited July 28, 2015).

[2] Hammer toe is a toe, usually the second, that is permanently flexed downward, resulting in a claw like shape. *See* STEDMAN'S MEDICAL DICTIONARY, ("Stedman's"), 352-53 (1995).

[3] Metatarsalgia is a cramping burning pain that focuses in the region of the metatarsal bones of the foot. *See* Stedman's at 512.

[4] Sjögren's syndrome occurs in menopausal women, characterized by keratoconjunctivitis sicca, dryness of mucous membranes, purpuric spots on the face and bilateral parotid enlargement; it is often associated with rheumatoid arthritis, Raynaud's phenomenon and dental caries. *See* Stedman's at 765.

found that medical improvement was expected with appropriate treatment; therefore, a continuing disability review was recommended in 60 months. (R. at 150.) On May 17, 2013, the Appeals Council reviewed the decision and remanded the matter to the ALJ for further consideration. (R. at 152-55, 232-37.) Upon remand, a second hearing was held on November 5, 2013, at which Worley was represented by counsel. (R. at 30-53.)

By decision dated December 20, 2013, the ALJ denied Worley's claims. (R. at 11-23.) The ALJ found that Worley met the disability insured status requirements of the Act for DIB purposes through September 30, 2014. (R. at 13.) The ALJ found that Worley had not engaged in substantial gainful activity since January 1, 2010, the alleged onset date. (R. at 13.) The ALJ found that the medical evidence established that Worley had severe impairments, namely arthritis and tendonitis of the bilateral knees; myalgias and myositis; lower back pain; hammer toe, metatarsalgia and plantar fasciitis; history of Sjögren's syndrome; and an anxiety disorder, not otherwise specified, but she found that Worley did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13-14.) The ALJ found that Worley had the residual functional capacity to perform sedentary work[6] that required no more than occasional pushing and pulling with

---

[5] Hashimoto's thyroiditis, also called Hashimoto's disease, is an autoimmune disease in which the immune system turns against the body's own tissues causing the immune system to attack the thyroid, which can lead to hypothyroidism. *See* http://www.webmd.com/women/hashimotos-thyroiditis-symptoms-causes-treatments (last visited July 28, 2015).

[6] Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties. Jobs are sedentary if walking or standing are required

the lower extremities, kneeling, crouching, stooping, balancing and climbing ramps and stairs, that did not require her to crawl, work around vibrating surfaces, hazardous machinery, unprotected heights or to climb ladders, ropes and scaffolds and that required no more than occasional interaction with the public. (R. at 15.) The ALJ further found that Worley should avoid activities involving deep knee bending. (R. at 15.) The ALJ found that Worley could not perform any of her past relevant work. (R. at 22.) Based on Worley's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of jobs existed in the national economy that Worley could perform, including jobs as an inspector and an addresser. (R. at 23.) Thus, the ALJ concluded that Worley was not under a disability as defined by the Act and was not eligible for DIB or SSI benefits. (R. at 23.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2014).

After the ALJ issued her decision, Worley pursued her administrative appeals, (R. at 5), but the Appeals Council denied her request for review. (R. at 1-3.) Worley then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2014). This case is before this court on Worley's motion for summary judgment filed October 28, 2014, and the Commissioner's motion for summary judgment filed December 3, 2014.

---

occasionally and other sedentary criteria are met. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2014).

## II. Facts

Worley was born in 1965, (R. at 34, 300, 304), which, at the time of the ALJ's decision, classified her as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Worley obtained her general equivalency development, ("GED"), diploma, and she has past work experience as a cashier, a certified nurse's assistant, a customer service representative, a desk clerk and a server. (R. at 34, 385-86, 395.) Worley testified at her November 2013 hearing that she had surgeries on her feet in 2011 and 2012. (R. at 35.) She stated that she took Xanax, but did not seek psychiatric treatment for anxiety and depression. (R. at 38-39.) Worley stated that she had never obtained a driver's license. (R. at 40.) She stated that she could not lift items weighing more than 10 pounds. (R. at 41.) Worley stated that she could stand and sit up to 30 minutes without interruption. (R. at 41.)

Gerald Wells, a vocational expert, also was present and testified at Worley's hearing. (R. at 45-51.) Wells was asked to consider a hypothetical individual who could perform light[7] work that required only occasional pushing and pulling with the lower extremities, climbing of ramps and stairs, balancing, kneeling and stooping, that never required her to crawl, to climb ladders, ropes or scaffolds, to work on vibrating surfaces, to work around hazardous machinery and unprotected heights, or to deep knee bend and that required no more than occasional interaction with the general public. (R. at 47.) Wells stated that Worley could perform her past work as a server or dietary aide as it was performed, but not as it is listed in the Dictionary of Occupational Titles, ("DOT"). (R. at 47.) Wells stated that Worley

---

[7] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2014).

performed this job at the light exertional level; however, the DOT listed this job at the medium[8] exertional level. (R. at 47.) Wells stated that a hypothetical individual of Worley's age, education and past work history, and who was limited as indicated by the ALJ, would be limited to performing sedentary work. (R. at 48.) He testified that such an individual could perform sedentary jobs existing in significant numbers in the national economy, including jobs as a dispatcher, a sorter/inspector and an addresser. (R. at 48-49.) Wells next testified that all jobs would be eliminated should the same hypothetical individual be off task 10 to 20 percent of any workday and if she needed to elevate her legs three to four hours a day. (R. at 49-50.)

In rendering her decision, the ALJ reviewed records from Howard S. Leizer, Ph.D., a state agency psychologist; Dr. Thomas M. Phillips, M.D., a state agency physician; Eugenia Hamilton, Ph.D., a state agency psychologist; Dr. Joseph Duckwall, M.D., a state agency physician; Dr. William M. Bell, III, M.D.; Dr. Sherif Yacoub, M.D.; Medical Associates @ Exit 7; Dr. David P. Guldseth, M.D.; Dr. Benjamin S. Scharfstein, Jr., M.D.; Holston Medical Group; Wade Smith, M.S., a licensed senior psychological examiner; Dr. John C. Allen, D.P.M., a podiatrist; Sapling Grove Surgery Center; and Dr. Steven Jackson, M.D.

On September 8, 2008, May 7, 2009, and August 31, 2009, Dr. William M. Bell, III, M.D., treated Worley for complaints of fatigue, arthritis and arthralgias. (R. at 463-66.) There is no indication in the record that Dr. Bell placed any limitations on Worley's work-related abilities.

---

[8] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2014).

The record shows that Worley was treated by Dr. Sherif Yacoub, M.D., from September 2008 through September 2011 for hypothyroidism, Vitamins B12 and D deficiencies, hypertension and knee, back, muscle and joint pain. (R. at 470-72, 476-79, 484-86, 491-93, 497-99, 505-07, 510-12, 582-84, 587-89, 597-99, 601-03, 611-14, 624-26, 775-76, 787-91, 795-98.) There is no indication in the record that Dr. Yacoub placed any limitations on Worley's work-related abilities.

The record shows that Worley received treatment from Medical Associates @ Exit 7 from 2008 through 2010 for complaints of bronchitis; low back pain with paraspinal muscle spasm; insomnia; hypothyroidism; Vitamin D deficiency; hypocalcemia;[9] hypertension; lupus; anxiety; and swelling of the legs. (R. at 516-74.) In July 2008, x-rays of Worley's lumbar spine showed some degenerative osteophyte formation anteriorly. (R. at 681.) On August 5, 2008, an MRI of Worley's lumbar spine was unremarkable. (R. at 683.) On January 22, 2009, it was noted that Worley's lupus was fair. (R. at 528.) On January 26, 2009, it was noted that Worley's hypertension was stable. (R. at 527.) On August 17, 2009, it was noted that Worley's hypothyroidism was stable. (R. at 521.)

On August 11, 2009, Dr. David P. Guldseth, M.D., noted that an ultrasound of Worley's carotid arteries showed intimal thickening throughout the carotid system bilaterally; bilateral minimal stenosis without ulceration; and vertebral flow was antegrade bilaterally. (R. at 552.) On August 27, 2009, a coronary artery calcium scoring examination showed no identifiable plaque. (R. at 547-50, 652-53.) On March 19, 2010, an MRI of Worley's lumbar spine was normal. (R. at 534.) A bone scan showed minimal uptake in the knees and ankles, likely degenerative in nature, and an unusual area of photopenia in the anterior

---

[9] Hypocalcemia is abnormally low levels of calcium in blood. *See* Stedman's at 393.

calvarium. (R. at 535-36.) An MRI of Worley's thoracic spine showed a cyst on the left kidney; facet arthrosis on the left at the T10-T11 level; and chronic loss of the posterior vertebral body height at the T6 level, probably related to Schmorl's node defects. (R. at 538-39.)

On March 19, 2010, Worley saw Dr. Benjamin S. Scharfstein, Jr., M.D., for follow-up after laparoscopic repair of her incisional hernia. (R. at 572.) Both Worley and Dr. Scharfstein were pleased with her postoperative progress. (R. at 572.) Dr. Scharfstein opined that Worley could resume normal activities after four weeks. (R. at 572.)

On May 21, 2010, Dr. Thomas M. Phillips, M.D., a state agency physician, opined that Worley had the residual functional capacity to perform light work. (R. at 100-01.) He found that Worley could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl and never climb ladders, ropes and scaffolds. (R. at 100.) No manipulative, visual or communicative limitations were noted. (R. at 100-01.) Dr. Phillips opined that Worley should avoid even moderate exposure to hazards, such as machinery and heights. (R. at 101.)

On May 26, 2010, Howard S. Leizer, Ph.D., a state agency psychologist, opined that there was no evidence indicating that Worley suffered from a severe mental impairment. (R. at 99.)

On June 28, 2010, Dr. Charles A. Bolick, M.D., with Holston Medical Group, ("HMG"), saw Worley for complaints of nervousness, depression and swelling of her hands and feet. (R. at 635-36.) Dr. Bolick reported that Worley displayed appropriate behavior and judgment. (R. at 636.) Her mood showed

evidence of anxiety and depression. (R. at 636.) Dr. Bolick diagnosed depression with anxiety. (R. at 636.) On July 8, 2010, Worley saw Dr. Song Zang, M.D., a rheumatologist with HMG, for complaints of left knee pain with "catching" during walking, causing her to fall on five separate occasions. (R. at 637-38.) X-rays of both of Worley's knees showed osteoarthritis and patellofemoral syndrome. (R. at 637.) Worley had normal muscle strength in both the upper and lower extremities bilaterally. (R. at 638.) On July 15, 2010, an MRI of Worley's left knee showed chondromalacia[10] involving the patella; some developing tendinosis versus an intratendinous mild partial tear of the patellar tendon at the origin from the patella; some mild soft tissue edema anterior to the patellar tendon; and no meniscal tear. (R. at 667-68.) An MRI of Worley's right knee showed areas of chondromalacia involving the patella and, to a lesser extent, the medial femoral condyle. (R. at 667.)

On August 3, 2010, Dr. Bolick saw Worley for complaints of a severe headache. (R. at 726-27.) She stated that she fell two weeks prior and hit the back of her head on the hitch of a truck. (R. at 727.) A CT scan of Worley's head was normal. (R. at 733.) Dr. Bolick diagnosed headache status-post fall with closed head injury. (R. at 727.) On August 9, 2010, Worley saw Dr. Zang for complaints of left knee pain following a fall that occurred two weeks prior. (R. at 771-72.) Dr. Zang reported that Worley had normal range of motion in all joints. (R. at 772.) Dr. Zang diagnosed patellar tendonitis. (R. at 772.)

On August 11, 2010, Dr. Joseph Duckwall, M.D., a state agency physician, opined that Worley had the residual functional capacity to perform light work. (R.

---

[10] Chondromalacia is abnormal softening or degeneration of cartilage of the joints, especially of the knee. *See* Stedman's at 153.

at 123-24.) He found that Worley could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl and never climb ladders, ropes and scaffolds. (R. at 123) No manipulative, visual or communicative limitations were noted. (R. at 123.) Dr. Duckwall opined that Worley should avoid even moderate exposure to hazards, such as machinery and heights. (R. at 124.)

On August 16, 2010, Eugenie Hamilton, Ph.D., a state agency psychologist, opined that there was no evidence indicating that Worley suffered from a severe mental impairment. (R. at 121-22.)

On December 15, 2010, Worley saw Dr. Zang for complaints of left knee pain with swelling. (R. at 777-78.) She had normal range of motion of all joints. (R. at 778.) She was diagnosed with knee joint pain, myalgias and myositis. (R. at 778.)

On February 8, 2011, Worley reported to Linda Davidson, F.N.P., a family nurse practitioner with HMG, that medication relieved her symptoms of hypertension, headaches and fatigue. (R. at 711-13.)

On July 12, 2011, Worley saw Dr. John C. Allen, D.P.M., a podiatrist, for complaints of foot pain. (R. at 742-43.) Dr. Allen noted that Worley had normal muscle strength and tone and a normal musculoskeletal examination. (R. at 742.) On August 2, 2011, Worley again complained of foot pain. (R. at 745.) She had normal muscle tone and strength. (R. at 745.) Dr. Allen diagnosed foot pain and hammer toe. (R. at 745.) On September 2, 2011, Worley complained of right heel

pain. (R. at 746.) On November 30, 2011, Worley underwent a Weil osteotomy[11] of the right second metatarsophalangeal joint. (R. at 738-41.) On December 27, 2011, Worley saw Dr. Allen for a post-operative visit, and she voiced no complaints. (R. at 750.)

On January 27, 2012, Worley saw Dr. Allen for complaints of bilateral heel pain. (R. at 751.) Dr. Allen diagnosed plantar fasciitis/fibromatosis. (R. at 751.) An injection was given at the bilateral plantar fascia. (R. at 751.) On February 10, 2012, Worley continued to complain of heel pain. (R. at 752.) Dr. Allen diagnosed plantar fasciitis/fibromatosis. (R. at 752.) On February 24, 2012, Worley reported some improvement, but continued to complaint of heel pain. (R. at 753.) Surgical correction was discussed. (R. at 753.)

On March 7, 2012, Worley saw Davidson for complaints of myofascial pain, headaches and anxiety. (R. at 690-94.) Examination showed that Worley had a normal gait; no joint swelling; normal movements of all extremities; no joint instability; and normal muscle strength and tone. (R. at 693.) Davidson noted that Worley's insight and judgment were intact, and she had a normal affect. (R. at 693.)

On March 14, 2012, Worley underwent removal of hardware from the right second metatarsal and Weil osteotomy of the left second digit with arthroplasty. (R. at 734-37.) On March 16, 2012, Worley saw Dr. Allen for a post-operative

---

[11] Weil osteotomy is the surgical division of distal part of a bone and fragment displacement allowing distal part correction/realignment. *See* Jean Mooney, *Illustrated Dictionary of Podiatry and Foot Science* (2009) http://medical-dictionary.thefreedictionary.com/Weil+osteotomy (last visited July 28, 2015).

visit, and she voiced no complaints. (R. at 755.) On March 26, 2012, and April 9, 2012, Worley's post-operative healing was noted as satisfactory. (R. at 756-57.)

On April 19, 2012, Worley saw Dr. Zang for complaints of right knee and back pain. (R. at 805-06.) She had normal muscle strength in all extremities. (R. at 806.) Her stance and gait were normal, she had no swelling in her joints, and she had normal range of motion. (R. at 806.) On April 23, 2012, Davidson noted that Worley denied weakness, joint pain or change in range of motion. (R. at 759.) She had normal gait, muscle strength and tone. (R. at 760.) On May 3, 2012, Dr. Michael Nannenga, M.D., a physician with HMG, reported a normal exam. (R. at 811-14.)

On May 10, 2012, Worley returned to Dr. Allen with no complaints. (R. at 839.) Dr. Allen noted no evidence of wound opening or signs of infection. (R. at 839.) On June 12, 2012, Worley complained of some tenderness. (R. at 840.) X-rays were taken of her foot, which showed no soft tissue abnormalities; no evidence of fracture, tumor or infection was noted; the bone quality was normal; the screw fixation was well placed; and the osteotomy was not visible. (R. at 840.) Dr. Allen noted a satisfactory post-operative healing. (R. at 840.) On June 21, 2013, Worley complained of foot pain, more severe on the left. (R. at 843.) Dr. Allen noted normal muscle strength in all extremities, tenderness with palpation to the bilateral third metatarsal heads and normal muscle tone. (R. at 843.) Dr. Allen diagnosed deformed metatarsal. (R. at 843.)

On July 6, 2012, and August 17, 2012, Worley reported improvement, and Dr. Allen noted satisfactory healing. (R. at 841-42.) On July 22, 2013, Worley reported wearing metatarsal pads daily, with some improvement. (R. at 844.)

-12-

On July 9, 2012, Dr. Manoj Srinath, M.D., a physician with HMG, performed a colonoscopy with biopsy, an esophagogastroduodenoscopy with biopsy and esophageal dilatation, which showed an irregular Z-line with mild distal stricture. (R. at 925-26.) On August 14, 2012, Dr. Bolick reported that Worley's hypertension was controlled. (R. at 899.) On October 1, 2012, Dr. Srinath diagnosed Worley with esophageal reflux and cyclic vomiting syndrome. (R. at 895.) On November 12, 2012, Dr. Nannenga noted that Worley's examination was normal, including a normal mood and affect. (R. at 884.) On December 24, 2012, Dr. Bolick noted that Worley's hypertension was stable. (R. at 878.)

On February 15, 2013, Worley saw Dr. Roger McSharry, M.D., a physician with HMG, for complaints of shortness of breath. (R. at 922-23.) A CT scan of Worley's chest was normal with the exception of a granuloma. (R. at 923, 934.) Dr. McSharry diagnosed nocturnal dyspnea of uncertain cause, and he noted no evidence of obstructive or restrictive lung disease. (R. at 923, 936.) On February 27, 2013, Worley saw Dr. Zang for complaints of left knee pain. (R. at 867-68.) She had normal muscle strength in all extremities; normal deep tendon reflexes; normal stance and gait; and normal range of motion. (R. at 868.) On March 5, 2013, Worley complained of abdominal pain, cyclic vomiting syndrome and chronic heartburn. (R. at 862-64.) X-rays of Worley's pelvis were normal. (R. at 930.) Worley had normal gait, muscle tone and strength in all extremities and normal mood and affect. (R. at 863.) On April 15, 2013, Worley complained of abdominal pain. (R. at 860-61.) A CT scan showed her common bile duct size was at the upper limits of normal. (R. at 861.) On May 13, 2013, Worley complained of fatigue. (R. at 852.) Dr. Nannenga reported a normal examination, and he had no explanation for Worley's source of fatigue. (R. at 855.) In June and August 2013,

-13-

Worley saw Dr. Zang for complaints of bilateral knee pain. (R. at 846-47, 869.) Dr. Zang noted normal muscle strength in all extremities, normal deep tendon reflexes and normal stance and gait. (R. at 846, 848, 870.) Dr. Zang noted that Worley's knee pain was consistent with osteoarthritis and that she was stable. (R. at 846.)

On July 1, 2013, Wade Smith, M.S., a licensed senior psychological examiner, evaluated Worley at the request of Disability Determination Services. (R. at 819-22.) Worley reported that she had never received mental health treatment from a psychiatrist, psychologist or counselor, and had never been hospitalized for mental health treatment. (R. at 820.) She reported that she took Xanax prescribed by her primary care physician, but no other psychiatric medications. (R. at 820.) Worley described her mood as generally "bubbly … pretty good." (R. at 820.) She reported occasional panic attacks, but Smith opined that she did not meet the criteria for panic disorder. (R. at 821.) Smith noted that while Worley had a mildly anxious affect, she was cooperative, had appropriate eye contact and had normal speech thought process, concentration, cognition and memory. (R. at 819-21.) Smith reported that Worley's fine and gross motor skills were within normal limits. (R. at 822.) He noted that Worley's concentration and persistence appeared adequate to meet the demands of simple or detailed work-related decisions. (R. at 822.) Smith noted that Worley did not appear to be limited in her ability to adapt to changes in the workplace, to be aware of normal hazards or to take appropriate precautions. (R. at 822.) He reported that Worley's chronic pain condition may detract from the accuracy and reliability of her judgment. (R. at 822.) Smith diagnosed a pain disorder associated with both psychological factors and a general medical condition and anxiety disorder, not otherwise specified. (R.

at 822.) Smith assessed Worley's then-current Global Assessment of Functioning score, ("GAF"),[12] at 55.[13] (R. at 822.)

Smith completed a mental assessment opining that Worley's ability to understand, remember and carry out instructions was not affected by her impairment. (R. at 823-25.) He opined that Worley had a slight limitation in her ability to interact with supervisors and co-workers. (R. at 824.) Smith opined that Worley had a mild to moderate limitation in her ability to interact appropriately with the public. (R. at 824.)

On July 27, 2013, Dr. Steven Jackson, M.D., examined Worley at the request of Disability Determination Services. (R. at 827-31.) Worley complained of low back pain and bilateral knee pain. (R. at 827.) Dr. Jackson noted that Worley was in no acute distress, and she sat comfortably throughout the entirety of the examination. (R. at 828.) Worley was "very talkative, but appropriate." (R. at 828.) Her mood and affect were appropriate, and her cognition appeared to be intact. (R. at 828.) Worley exhibited normal strength, with the exception of 4/5 strength of knee extension and hip flexion bilaterally. (R. at 829.) She had tenderness to palpation of the right medial knee and left medial and lateral knee and tenderness to palpation at the midline lumbar spine around the L3 level. (R. at 829.) Dr. Jackson noted no knee crepitus, effusion or swelling bilaterally. (R. at

---

[12] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[13] A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning...." DSM-IV at 32.

829.) Dr. Jackson diagnosed low back pain and bilateral knee pain with a favorable prognosis with treatment. (R. at 829.)

Dr. Jackson completed a medical assessment indicating that Worley could frequently lift and carry items weighing up to 10 pounds and occasionally lift and carry items weighing up to 50 pounds. (R. at 832-37.) He opined that Worley could sit a total of four hours in an eight-hour workday and stand and/or walk a total of two hours in an eight-hour workday. (R. at 833.) Dr. Jackson opined that Worley could sit, stand and walk up to six hours without interruption.[14] (R. at 833.) He opined that Worley could frequently push and pull with her hands and continuously reach, handle, finger and feel. (R. at 834.) Dr. Jackson opined that Worley had no foot abnormalities and that she could continuously operate foot controls with both feet. (R. at 834.) Dr. Jackson reported that Worley could occasionally climb stairs and ramps, balance, stoop and kneel and never climb ladders or scaffolds or crouch. (R. at 835.) He found that Worley could frequently operate motor vehicles; occasionally work around moving mechanical parts; and never work around unprotected heights. (R. at 836.) He found that Worley should avoid activities that involved deep knee bending and prolonged sitting and standing. (R. at 837.) Dr. Jackson found that these limitations were first present in 2004. (R. at 837.)

## III. Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2014). *See also Heckler v. Campbell*,

---

[14] It appears that Dr. Jackson erred in completing this form and transposed his findings for continuous activity and total activity in an eight-hour workday.

461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2014).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2011 & West 2012); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

The ALJ found that Worley had the residual functional capacity to perform sedentary work that required no more than occasional pushing and pulling with the lower extremities, kneeling, crouching, stooping, balancing and climbing ramps and stairs, that did not require her to crawl, work around vibrating surfaces, hazardous machinery, unprotected heights or to climb ladders, ropes and scaffolds and that required no more than occasional interaction with the public. (R. at 15.) The ALJ further found that Worley should avoid activities involving deep knee

bending. (R. at 15.) In her brief, Worley argues that the ALJ's hypothetical questions to the vocational expert did not accurately describe her work-related limitations. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 11-16.) In particular, Worley argues that the ALJ erred by failing to include in the hypothetical question to the vocational expert the limitation that she could only occasionally crouch. (Plaintiff's Brief at 12.) Worley further argues that the interaction between the ALJ and the vocational expert resulted in vague and unclear testimony resulting in the ALJ's failure to meet the burden of showing that other jobs existed that she could perform. (Plaintiff's Brief at 12-14.) Worley further argues that the ALJ failed to properly evaluate the consultative evaluation reports of Dr. Jackson and Smith and the record as a whole. (Plaintiff's Brief at 16-19.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Worley argues that the ALJ erred by failing to include in the hypothetical question to the vocational expert the limitation that she could only occasionally crouch. (Plaintiff's Brief at 12.) Worley further argues that the interaction between the ALJ and the vocational expert resulted in vague and unclear testimony

resulting in the ALJ's failure to meet the burden of showing that other jobs existed that she could perform. (Plaintiff's Brief at 12-14.) Based on my review of the record, I do not find these arguments persuasive. While the ALJ failed to include that Worley was limited to occasional crouching in her hypothetical to the vocational expert, this omission was harmless error because the omission does not significantly erode the occupational base for sedentary work. Social Security Ruling, ("SSR"), 83-14 states that, "to perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch…." S.S.R. 83-14, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings 1983-1991 (West 1992). In addition, SSR 96-9p states that "[p]ostural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." S.S.R. 96-9p, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings 1992-2013 (West Supp. 2013).

The vocational expert testified that a significant number of jobs existed that an individual with the limitations as found by the ALJ could perform. (R. at 48-49.) The vocational expert stated that, nationally, there are 182,000 dispatcher jobs available and 4,000 in the state of Virginia. (R. at 48-49.) He identified 435,000 sorter/inspector jobs nationally and 8,200 in the state of Virginia. (R. at 49.) Finally, the vocational expert identified 96,000 addresser jobs nationally and 1,500 in the state of Virginia. (R. at 49.) The Fourth Circuit has recognized that as few as 110 jobs within the region represents a significant number. *See Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979).

Worley further argues that the ALJ failed to properly evaluate the consultative evaluation reports of Dr. Jackson and Smith and the record as a whole. (Plaintiff's Brief at 16-19.) Based on my review of the record, I also do not find this argument persuasive. The ALJ considered and weighed the medical opinions of record, including those of Dr. Jackson and Smith. (R. at 19-20.) The ALJ stated that she was giving some weight to the opinion of Dr. Jackson because it was internally inconsistent and inconsistent with his mild objective medical findings and with the record as a whole. (R. at 19.) Dr. Jackson noted that Worley was in no acute distress and that she sat comfortably throughout the entirety of the examination. (R. at 828.) He found that Worley exhibited normal strength, with the exception of 4/5 strength of knee extension and hip flexion bilaterally. (R. at 829.) Dr. Jackson opined that Worley could frequently lift and carry items weighing up to 10 pounds and occasionally lift and carry items weighing up to 50 pounds. (R. at 832-37.) He opined that Worley could frequently push and pull with her hands and continuously reach, handle, finger and feel. (R. at 834.) Dr. Jackson opined that Worley had no foot abnormalities and that she could continuously operate foot controls with both feet. (R. at 834.) Dr. Jackson reported that Worley could occasionally climb stairs and ramps, balance, stoop and kneel and never climb ladders or scaffolds or crouch. (R. at 835.) He found that Worley could frequently operate motor vehicles; occasionally work around moving mechanical parts; and never work around unprotected heights. (R. at 836.) He found that Worley should avoid activities that involved deep knee bending and prolonged sitting and standing. (R. at 837.) The ALJ found that Worley would be limited to performing sedentary work because she had a mild antalgic gait and consistent complaints of knee pain. (R. at 19.) In fact, the record shows that upon examination, Worley had normal muscle strength in all extremities; normal deep tendon reflexes; normal stance and gait; and normal range of motion. (R. at 638, 693, 742, 745, 760, 772,

778, 806, 813, 843, 846, 848, 855, 863, 868, 870, 884.) X-rays of Worley's knees showed osteoarthritis, and Dr. Zang reported that Worley's knee pain was consistent with osteoarthritis, which was stable. (R. at 637, 846.)

The ALJ noted that she had given Smith's opinion some weight because he examined Worley. (R. at 20.) She further noted that Smith's findings and the medical evidence of record showed that Worley rarely complained of anxiety and that it was well-controlled with Xanax. (R. at 20.) Worley stated that she had never received mental health treatment from a psychiatrist, psychologist or counselor, and had never been hospitalized for mental health treatment. (R. at 820.) Worley reported her mood as generally "bubbly … pretty good." (R. at 820.) Smith reported that Worley had normal thought process, concentration, cognition and memory. (R. at 819-21.) Two state agency psychologists reported that the medical evidence failed to establish a severe mental impairment. (R. at 99, 122.) In addition, it was noted in 2012 and 2013 that Worley had intact insight and judgment and cognition and an appropriate mood and affect. (R. at 693, 828, 884.) Based on this, I find that substantial evidence exists to support the ALJ's weighing of the medical evidence.

Based on the above reasoning, I conclude that substantial evidence supports the ALJ's finding with regard to Worley's residual functional capacity and her weighing of the evidence. An appropriate order and judgment will be entered.

DATED:     July 28, 2015.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE